# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

DARVIN MORRIS,

    Petitioner,

v.

VICK FLOURNOY, Warden; FEDERAL BUREAU OF PRISONS; and UNITED STATES ATTORNEY GENERAL,[1]

    Respondents.

CIVIL ACTION NO.: 2:16-cv-126

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Darvin Morris ("Morris"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response, (doc. 13), and Morris filed a Traverse, (doc. 14). For the reasons which follow, I **RECOMMEND** the Court **DISMISS** Morris' Petition, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Morris *in forma pauperis* status on appeal.

## BACKGROUND

Morris was convicted in this District, after entry of a guilty plea, of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Honorable William T. Moore, Jr., sentenced Morris to 120 months' imprisonment on July 29, 2013, and recommended Morris receive credit against his sentence for

---

[1] The only proper respondent in a Section 2241 case such as this is the petitioner's immediate custodian–the warden of the facility where the petitioner is confined. See Rumsfeld v. Padilla, 542 U.S. 426, 434–35 (2004). Accordingly, Vick Flournoy is the only proper Respondent in this Section 2241 action. Therefore, the Court should **DISMISS** the remaining Respondents.

his time served since January 8, 2013. (Doc. 13-1, pp. 12–13) Morris has a projected release date of July 25, 2022, via good conduct time credit. (Id. at p. 10.)

In his Petition, Morris seeks three items, all of which challenge the Bureau of Prisons' ("BOP") sentence calculation. First, Morris seeks an award of pretrial credit from October 10, 2012, through November 7, 2013. Second, Morris seeks an award of pretrial credits from the date that a federal detainer was lodged against him, i.e., Morris seeks compliance with Judge Moore's sentencing computation recommendation. Finally, Morris seeks a *nunc pro tunc* designation from the BOP so that his state sentence can be concurrently designated with his federal sentence. (Doc. 1, p. 4.)

Respondent avers Morris failed to exhaust his administrative remedies prior to filing his Petition, and his Petition should be dismissed as a result. (Doc. 13.) The Court addresses Respondent's contention.

## DISCUSSION

### I. Whether Morris Exhausted his Administrative Remedies

#### A. Legal Requirements for Exhaustion

The Eleventh Circuit Court of Appeals has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d

at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the United States Supreme Court has "held that the PLRA's [Prison Litigation Reform Act's] text suggests no limits on an inmate's obligation to exhaust— irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1856 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[2]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to

---

[2] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

3

consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

**B.     Standard of Review for Exhaustion**

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of

4

administrative remedies.[3] First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C. The BOP's Exhaustion Requirements

The BOP has established an administrative remedy procedure through which an inmate may seek review of a grievance related to any aspect of his imprisonment. 28 C.F.R. § 542, *et seq*. The Administrative Remedy Program applies to all inmates incarcerated in penal institutions operated by the BOP. 28 C.F.R. § 542.10(b). Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff. 28 C.F.R. § 542.13(a). If this does not resolve the matter, an inmate must submit a formal written administrative remedy request within twenty calendar days of the incident giving rise to the grievance. 28 C.F.R. § 542.14(a). Administrative Remedy Form BP-229(13) is the form to be utilized at the institution level. This form is commonly referred to as a

---

[3] Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a Section 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683-JFA-TER, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting Section 2241's exhaustion requirements and Turner's application of exhaustion standards to a Section 2241 petition).

"BP-9" form. (Doc. 13-1, p. 28.) If unsatisfied with the Warden's response to the BP-9 administrative remedy request, an inmate may take an initial appeal to the appropriate Regional Director within twenty days of when the Warden signed the response. 28 C.F.R. § 542.15(a). Administrative Remedy Form BP-230(13) is the form to be utilized at the regional level. This form is commonly referred to as a "BP-10" form. Id. If unsatisfied with the Regional Director's response, an inmate may take a final appeal to the BOP's Office of General Counsel in Washington, D.C., within thirty days of when the Regional Director signed the response. (Doc. 13-1, p. 31.) Appeal to the BOP's Office of General Counsel is the final step in the BOP's administrative remedy process. (Id.) Administrative Remedy Form BP-231(13) is the form to be utilized at the final level. This form is commonly referred to as a "BP-11" form. (Id.) An inmate is to "consider the absence of a response to be a denial at that level." (Doc. 13-1, p. 33.)

### D. Morris' Efforts at Exhaustion

In his Petition, Morris maintains he exhausted his administrative remedies by filing a BP-9 at the administrative level to seek credit against his federal sentence for January 8, 2013, through July 29, 2013. (Doc. 1, p. 2.) Morris contends he was only awarded credit against his sentence for November 8, 2013, through November 12, 2013. (Id.)

Respondent avers Morris has filed only one BP-9 during his incarceration with the BOP, and he sought an award of jail credits from January 8, 2013, through July 29, 2013. However, Respondents asserts Morris did not pursue an appeal of the denial of his BP-9 at either the Regional or Central Office levels. In addition, Respondent contends Morris has not filed any administrative remedies concerning his request for *nunc pro tunc* designation. (Doc. 13, pp. 5–6.)

Morris responds that he filed Administrative Remedy Number 827437-F1 on July 6, 2015, while he was housed at the United States Penitentiary in Coleman, Florida. (Doc. 14, p. 2.) Morris asserts he did not receive the Warden's response to the request until September 12, 2015, and he was transferred to FCI Jesup on September 15, 2015. (Id. at p. 3.) Morris alleges he placed an extension of time to file a BP-10 appeal in the prison mail system while he was still housed in the Coleman, Florida, facility. Morris also alleges a case manager at FCI Jesup told him that the unit team did not have any administrative remedy forms available, and, after he was told this on several occasions, he filed his Section 2241 Petition. (Id.) Morris maintains BOP staff impeded his attempts at exhaustion by not having administrative remedies available, and the Court should deem his administrative remedies exhausted. (Id. at p. 4.)

At the first step of the Turner analysis, Morris exhausted the administrative remedies available to him as to his request for credit against his federal sentence. According to Morris, he could not obtain a BP-10 form after he arrived at FCI Jesup. However, under the more exacting crucible of Turner's second step, Morris' claim of exhaustion withers.

Though the Supreme Court rejected a "special circumstances" exception to exhaustion in Ross, it reiterated that a prisoner need only exhaust those remedies which were available to him. Ross, ___ U.S. at ___ 136 S. Ct. at 1856–57 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. First, the Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate

has no obligation to exhaust the remedy. Id. Second, when administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required. Id., ___ U.S. at ___, 136 S. Ct. at 1859 (citing Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007), and Turner, 541 F.3d at 1084). Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." Id.

In his Traverse, Morris asserts he did not receive the Warden's response to his BP-9 request until September 12, 2015, which was more than a month after the Warden responded to his request on July 27, 2015. (Doc. 14, p. 3.) However, by Morris' own admissions and submissions to this Court, it is evident he did not properly and fully exhaust his administrative remedies prior to filing his Petition. Even accepting as true Morris' assertion that he did not receive the Warden's response to his BP-9 (by which he requested credit against his sentence from January 8 through July 29, 2013) until September 12, 2015, it is evident Morris did not exhaust his available administrative remedies. Morris submitted his BP-9 on July 6, 2015, (doc. 1, p. 7), and it was received on July 8, 2015, (id. at p. 11). Morris' BP-9 was considered filed on July 8, 2015, and the Warden then had twenty (20) calendar days by which to respond to Morris' request, or until July 28, 2015. 28 C.F.R. § 542.18. The Warden's denial of Morris' BP-9 is dated July 21, 2015, and staff delivered it to Morris on July 27, 2015. (Doc. 1, p. 12.) If Morris did not receive the Warden's written response to his BP-9 by July 28, 2015, (the line on the response for his signature is blank), then he was to "consider the absence of a response to be a denial at that level." (Doc. 13-1, p. 33.) Accordingly, Morris should have filed an appeal of

8

this denial or an extension to do so within twenty (20) days, or by August 17, 2015, and he failed to do so. What is more, there is nothing before the Court, aside from Morris' conclusory assertion, that he filed a request for an extension after September 12, 2015, prior to his transfer from the Coleman, Florida, facility. In contrast, the BOP's SENTRY system reveals that Morris' BP-9 was denied on July 21, 2015, and he failed to pursue his request for credit against his sentence any further. (Doc. 13-1, p. 43.) Moreover, Morris does not assert he filed any administrative remedy request whatsoever based on his request for *nunc pro tunc* designation.

Morris does not present credible evidence that he is entitled to one of the exceptions to availability the Supreme Court espoused in Ross.[4] Rather, the Court finds BOP's account of the availability of remedies more credible than Morris' account. Thus, Morris failed to exhaust his administrative remedies as to the relief sought via his Section 2241 Petition prior to the filing of his Petition. Consequently, the Court should **DISMISS** Morris' Petition.

## II. Leave to Appeal *in Forma Pauperis*

The Court should also deny Morris leave to appeal *in forma pauperis*. Though Morris has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous

---

[4] Morris arguably sets forth an assertion that officials at FCI Jesup could not provide him with his requested relief because the case manager repeatedly stated he did not have BP-10 forms. However, as discussed earlier in this Report, the evidence before the Court does not support this assertion. Nor would such an assertion—even if verifiable—absolve Morris from having to satisfy the exhaustion requirements as to the filing of a BP-10 prior to his transfer to FCI Jesup.

claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Morris' Petition, Respondent's Response, and Morris' Traverse, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Morris *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS without prejudice** Morris' Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Morris leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Morris and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 11th day of August, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA